1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  HECTOR LOPEZ,                        )   No. C 13-0173 RMW(PR)
                                         )
        Plaintiff,                       )   ORDER GRANTING IN PART
12                                       )   AND DENYING IN PART
        v.                               )   DEFENDANTS' MOTION FOR
13                                       )   SUMMARY JUDGMENT;
                                         )   REFERRING CASE TO PRO SE
14  D. SPURGEON, et al.,                 )   PRISONER SETTLEMENT
                                         )   PROGRAM
15      Defendants.                      )
    _____ )   (Docket No. 28.)

16

17        Plaintiff, a state prisoner proceeding pro se, filed an amended civil rights complaint.

18  Defendants have filed a motion for summary judgment.  Plaintiff has filed an opposition to

19  defendants' motion for summary judgment, and defendants have filed a reply.  For the reasons

20  below, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

21                              **BACKGROUND**[1]

22        On August 12, 2010, Pelican Bay State Prison ("PBSP") suffered a flood in all of its

23  lower tiered cells.  (Am. Compl. at 3.)  Plaintiff, housed in a PBSP lower tiered cell, realized that

24  some of his personal property, including his pair of earbuds, had been damaged by the water.

25  (Id.)  On August 29, 2010, plaintiff filed a grievance regarding his damaged earbuds and

26  requested replacement earbuds.  (Id.)  On September 2, 2010, defendant M. Traylor denied

27  _____

28        [1]  The following facts are undisputed and taken in the light most favorable to plaintiff,
    unless otherwise indicated.
    Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se
    Prisoner Settlement Program
    P:\PRO-SE\RMW\CR.13\Lopez173msj.wpd

1    plaintiff's grievance and noted that the damage to the earbuds was plaintiff's fault. (Id.) On
2    September 6, 2010, plaintiff appealed the denial to the formal level of review. (Id.)
3         At 7:45 a.m., on October 20, 2010, defendants D. Spurgeon and D. Hale arrived at
4    plaintiff's cell and requested that he submit to handcuffs. (Id.) Plaintiff was then removed from
5    his cell and placed in a holding cell. (Id.) Plaintiff asked why he was being removed from his
6    cell, and D. Spurgeon told him that it was because plaintiff had filed a grievance and caused
7    Spurgeon to waste his time reviewing the grievance. (Id. at 3-4.) As a result, said Spurgeon,
8    plaintiff's cell was going to be searched. (Id. at 4.) Spurgeon directed Hale to conduct a
9    "thorough search" of plaintiff's cell. (Id.) Spurgeon then offered plaintiff a new pair of earbuds
10   if plaintiff would withdraw his grievance. (Id.) Plaintiff agreed, and Spurgeon returned with
11   two pairs of earbuds from which plaintiff could choose. (Id.) After plaintiff chose a pair,
12   Spurgeon tested the earbuds on plaintiff's television to make sure they were working properly.
13   (Id. at 4-5.) When Spurgeon returned, he told plaintiff that the earbuds worked, and Spurgeon
14   left while Hale was still finishing the cell search. (Id. at 5.)
15        When the cell search was complete, Hale and non-defendant W. Reynolds escorted
16   plaintiff back to his cell. (Id.) Plaintiff discovered that his cell was ransacked and trashed. (Id.)
17   Plaintiff complained to Hale and Reynolds about the state of his cell, and Hale apologized and
18   offered to return the cell to state in which she found it to the best of her ability. (Id. at 6.)
19   Plaintiff declined her offer. (Id.)
20        Later that day, as plaintiff was re-organizing his cell, he discovered that a button on his
21   television was missing. (Id. at 7.) Upon further inspection, it turned out that it was a channel
22   button that had been pushed inside of the body of the television. (Id.) Plaintiff filed a grievance,
23   accusing both Spurgeon and Hale of trashing plaintiff's cell and breaking his television in
24   retaliation for plaintiff's filing of grievances. (Id.)
25        The next morning, on October 21, 2010, plaintiff was again handcuffed and removed
26   from his cell. (Id.) M. Traylor put plaintiff in a filthy shower for holding and stated that
27   Spurgeon told Traylor to search plaintiff's cell again and confiscate plaintiff's television because
28   plaintiff had filed an administrative grievance against Traylor's staff. (Id. at 7-8.) Plaintiff

complained that he was not supposed to be retaliated against for filing a grievance.  (Id.)  Traylor laughed and said, "Complain all you want . . . let's see who tires first.  I guarantee you things around here will only get wors[e] for you.  I know how to deal with guys like you.  You've see nothing yet."  (Id.)  Traylor then entered plaintiff's cell, trashed it, and took plaintiff's television. (Id.)

Plaintiff filed another administrative appeal against Spurgeon and Traylor.  (Id.)  A few weeks after this appeal, Spurgeon approached plaintiff and threatened him.  (Id. at 9.)  Spurgeon told plaintiff that the appeal was going to be denied, and if plaintiff filed one more complaint, "we are going to come take all of your property and lose all of your shit.  You've been warned." (Id.)  After that, plaintiff did not file any more appeals because he had an ongoing litigation challenging his criminal conviction and plaintiff did not want to jeopardize that litigation.  (Id. at 9-10.)

## ANALYSIS

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

1   Once the moving party meets its initial burden, the nonmoving party must go beyond the

2   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

3   genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

4   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

5   Liberty Lobby, Inc., 477 U.S. at 248 (1986). It is not the task of the court to scour the record in

6   search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).

7   The nonmoving party has the burden of identifying, with reasonable particularity, the evidence

8   that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the

9   moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

10   At the summary judgment stage, the court must view the evidence in the light most

11   favorable to the nonmoving party: if evidence produced by the moving party conflicts with

12   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

13   forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152,

14   1158 (9th Cir. 1999).

15   B.   Legal Claims

16      1.   Cruel and unusual punishment

17   Plaintiff alleges that the October 20 cell search conducted by Hale, and the October 21

18   cell search directed by Spurgeon and conducted by Traylor violated plaintiff's right against cruel

19   and unusual punishment.

20   There is no legitimate subjective expectation of privacy that a prisoner might have in his

21   prison cell and, accordingly, the Fourth Amendment proscription against unreasonable searches

22   does not apply within the confines of the prison cell. See Hudson v. Palmer, 468 U.S. 517, 525-

23   26 (1984). The recognition of privacy rights for prisoners in their individual cells simply cannot

24   be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

25   See id. at 526. However, this does not mean that a prisoner is necessarily without remedy for

26   maliciously motivated searches or calculated harassment unrelated to prison needs. The Eighth

27   Amendment always stands as a protection against cruel and unusual punishment. See id. at 528-

28   30.

1    The Supreme Court has stated that malicious cell searches and "calculated harassment

2    unrelated to prison needs" may implicate the Eighth Amendment.  Id.  Plaintiff's allegations of

3    two searches performed over the course of two days, however, do not reflect conduct rising to

4    the level of the "obduracy and wantonness . . . that characterize the conduct prohibited by the

5    Cruel and Unusual Punishments Clause."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  After

6    incarceration, "only the unnecessary and wanton infliction of pain . . . constitutes cruel and

7    unusual punishment forbidden by the Eighth Amendment."  Id. (internal quotation marks and

8    citation omitted).

9    Here, plaintiff's allegations simply do not suggest that such acts resulted in the denial of

10   "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834

11   (1994) (quotations omitted).  With respect to the first cell search on October 20, after plaintiff

12   complained about the state of his cell, Hale apologized and offered to restore plaintiff's

13   belongings in a more orderly fashion, but plaintiff refused the offer.  (Am. Compl. at 6.)  As

14   plaintiff concedes, Counselor Reynolds remarked that plaintiff and the other inmates kept their

15   cells so neat, "it is impossible for someone else to leave [the cells] the same way."  (Id.)  These

16   facts do not give rise to a reasonable inference that defendants' actions were anything more than

17   the lack of "ordinary due care" for plaintiff's belongings.  See Whitley, 475 U.S. at 319.

18   Certainly, the facts are insufficient to infer that defendants possessed a state of mind such that

19   they knew and disregarded an excessive risk to plaintiff's health or safety.  See Farmer, 511 U.S.

20   at 837.

21   With respect to the second cell search on October 21, plaintiff merely states that Traylor

22   was directed to search plaintiff's cell, "searched/trashed it, walked out carrying plaintiff's

23   television and exited the building."  (Am. Compl. at 8.)  Again, plaintiff's allegation, without

24   more, is insufficient to give rise to a reasonable inference that defendants were criminally

25   reckless in their actions.  Although the Eighth Amendment protects against cruel and unusual

26   punishment, this does not mean that federal courts can or should interfere whenever prisoners are

27   inconvenienced or suffer de minimis injuries.  See, e.g., Hudson, 503 U.S. at 9-10 (the Eighth

28   Amendment excludes from constitutional recognition de minimis uses of force); Anderson v.

1   County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary placement in safety cell that

2   was dirty and smelled bad did not constitute infliction of pain).

3       Plaintiff has therefore failed to present any evidence that shows that the cell searches at

4   issue were malicious or that they were of such a calculated nature that they constituted cruel and

5   unusual punishment.  The cell searches, were not objectively, "sufficiently serious" to violate the

6   Eighth Amendment, nor is there evidence that defendants harbored the requisite state of mind to

7   be culpable for an Eighth Amendment violation.  See Farmer, 511 U.S. at 837.  Accordingly,

8   defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims.

9       2.   Retaliation

10      Plaintiff alleges that defendants retaliated against him on three different occasions.  First,

11  plaintiff claims that Spurgeon and Hale came to plaintiff's cell on October 20, 2010, to search it,

12  trash it, and break plaintiff's television in retaliation for plaintiff's filing of an administrative

13  appeal on August 29, 2010, alleging that his earbuds were damaged as a result of a flood.

14  Second, after plaintiff filed a grievance on October 20, 2010 about the broken television,

15  plaintiff alleges that Traylor "searched/trashed" plaintiff's cell and confiscated plaintiff's

16  television in retaliation for plaintiff's administrative appeal.  Finally, after plaintiff submitted

17  another administrative appeal complaining about ongoing retaliation and punishment, on

18  October 21, 2010, Spurgeon threatened plaintiff that if plaintiff filed any more administrative

19  appeals, plaintiff's property would be confiscated and lost.

20      "Within the prison context, a viable claim of First Amendment retaliation entails five

21  basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

22  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

23  exercise of his First Amendment rights, and (5) the action did not reasonably advance a

24  legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)

25  (footnote omitted).

26      Defendants argue that there is an absence of evidence that they took an adverse action

27  against plaintiff and that their actions did not advance legitimate penological goals.  The court

28  will address each of the three allegations in turn.

1

a.      Initial search - October 20

2      Even assuming that the cell search of plaintiff's cell was an adverse action,[2] plaintiff

3  cannot demonstrate that plaintiff's grievance was the "but for" cause for the search, or that the

4  search did not reasonably advance a legitimate correctional goal.

5      A plaintiff must show a causal connection between a defendant's retaliatory animus and

6  subsequent injury in any sort of retaliation action.  Hartman v. Moore, 547 U.S.  250, 259

7  (2006).  The requisite causation must be but-for causation, without which the adverse action

8  would not have been taken; we say that upon a prima facie case of retaliatory harm, the burden

9  shifts to the defendant official to demonstrate that even without the impetus to retaliate he would

10  have taken the action complained of.  Id. at 260.  If there is a finding that retaliation was not the

11  but-for cause of the action complained of, the claim fails for lack of causal connection between

12  unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the

13  official's mind.  Id.  "It may be dishonorable to act with an unconstitutional motive and perhaps

14  in some instances be unlawful, but action colored by some degree of bad motive does not amount

15  to a constitutional tort if that action would have been taken anyway."  Id. (citations omitted).

16      Here, plaintiff alleges that Spurgeon told him his cell was going to be searched because

17  plaintiff filed a grievance and Spurgeon had to "waste" time to review it.  (Am. Compl. at 3-4.)

18  Thus, plaintiff has met his burden of setting forth evidence of a retaliatory motive.  However,

19  Spurgeon declares that the purpose of plaintiff's cell search was in order to establish whether

20  plaintiff had multiple sets of earbuds.  (Spurgeon Decl. ¶ 6.)  An inmate is only permitted to have

21  one set of earbuds and extra sets of earbuds are considered contraband because the materials can

22  be used for making weapons or hiding contraband.  (Id. ¶ 7.)  Therefore, before replacing

23  plaintiff's broken set of earbuds, defendants had to search the cell in order to ensure that plaintiff

24  did not have more.  (Id.)  Based on Spurgeon's undisputed statements, Spurgeon has met his

25  burden of showing by a preponderance that he would have taken the same action absent a

26

27

28
_____

[2]  To the extent plaintiff alleges that defendants purposely broke his television, plaintiff
provides no non-speculative evidence disputing defendants' statements that they did not break
the television.  (Spurgeon Decl. ¶ 12; Hale Decl. ¶¶ 7, 9-10; Traylor Decl. ¶ 10.)

1   retaliatory motive.  <u>See, e.g.</u>, <u>Riley v. Roach</u>, No. 12-15891, 572 Fed. Appx. 504, 506-07 (9th

2   Cir. May 9, 2014) (unpublished memorandum disposition) (affirming grant of summary

3   judgment when plaintiff failed to show that alleged retaliatory action was the "but for" cause,

4   and failed to prove the absence of legitimate correctional goals).

5           In addition, it is plaintiff's burden to provide evidence of the absence of a legitimate

6   correctional goal for the conduct of which he complains.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806

7   (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he

8   was retaliated against for exercising his constitutional rights and that the retaliatory action did

9   not advance legitimate penological goals, such as preserving institutional order and discipline).

10  Plaintiff does not so allege.  Moreover, based again on Spurgeon's undisputed statements that the

11  search was necessary to make sure that plaintiff did not have extra sets of earbuds because they

12  are considered contraband pursuant to the California Code of Regulations, defendants have

13  demonstrated that the search advanced a legitimate penological goal.  <u>See Hudson</u>, 468 U.S. at

14  529 (recognizing that cell searches to locate contraband can achieve the goal of prison security).

15          Accordingly, defendants are entitled to summary judgment on this claim.[3]

16              b.       Second search and confiscation of television - October 21

17          Even assuming that the cell search of plaintiff's cell and confiscation of plaintiff's

18  television are adverse actions, plaintiff cannot demonstrate that the filing of his grievance on

19  October 20 was the "but for" cause for the search, or that the search did not reasonably advance

20  a legitimate correctional goal.

21          Here, plaintiff alleges that Traylor removed plaintiff from his cell, placed plaintiff in a

22  "filthy" shower, and then entered plaintiff's cell and confiscated plaintiff's television.  (Am.

23  Comp. at 8.)  Plaintiff also alleges that Traylor told plaintiff that he was removing the television

24  Spurgeon asked Traylor to search plaintiff's cell again and confiscate the television because

25  plaintiff had filed a grievance the day before.  (<u>Id.</u>)  Thus, plaintiff has met his burden of setting

26

27          [3]  Because the court grants defendants' motion for summary judgment on the merits, it is
28  unnecessary to address defendants' alternate argument that they are entitled to qualified
    immunity.

1   forth evidence of a retaliatory motive.  However, defendants submit evidence that Traylor did

2   not conduct the cell search that day, or enter plaintiff's cell.  (Traylor Decl. ¶ 13.)  In fact, the

3   form documenting the confiscated television indicates that Traylor was in fact not the

4   confiscating officer.  (Spurgeon Decl., Ex. 1.)

5          Nonetheless, even assuming plaintiff's facts are true, defendants declare that because the

6   television was altered or broken, it was considered contraband because the materials within the

7   television could potentially be used and converted into weapons.  (Traylor Decl. ¶ 14; Spurgeon

8   Decl. ¶14.)  Based on defendants' undisputed statements, defendants have met their burden of

9   showing by a preponderance that they would have searched plaintiff's cell to confiscate the

10  television even absent a retaliatory motive because the altered television was considered

11  contraband.  Thus, plaintiff has failed to demonstrate the existence of a genuine issue of material

12  fact regarding retaliatory motive.  See, e.g., Riley v. Roach, No. 12-15891, 572 Fed. Appx. 504,

13  506-07 (9th Cir. May 9, 2014) (unpublished memorandum disposition).

14         In addition, plaintiff fails to allege the absence of a legitimate penological goal.  Based

15  again on defendants' undisputed statements that the search was necessary to confiscate the

16  altered television because, in its altered state, it was considered contraband, defendants have

17  demonstrated that the search and confiscation advanced a legitimate penological goal.  See

18  Hudson, 468 U.S. at 529 (recognizing that cell searches to locate contraband can achieve the

19  goal of prison security).

20         Accordingly, plaintiff has failed to demonstrate a genuine issue of material fact with

21  regard to retaliatory motive and a legitimate penological goal.  Defendants are entitled to

22  summary judgment on this claim.[4]

23                        c.     Threat to stop filing grievances

24         Plaintiff alleges that he filed an administrative appeal on October 21, 2010 against

25  Spurgeon and Traylor after defendants confiscated his television, and alleged retaliation and

26

27         [4]  Because the court grants defendants' motion for summary judgment on the merits, it is

28  unnecessary to address defendants' alternate argument that they are entitled to qualified
    immunity.

1    cruel and unusual punishment.  (Am. Compl. at 9.)  A few weeks later, Spurgeon approached

2    plaintiff with a copy of plaintiff's appeal and informed him that the appeal would be denied.

3    Spurgeon then told plaintiff that if he made another complaint, "we are going to come take all of

4    your property and lose all of your shit.  You've been warned."  (Id.)  Plaintiff asserts that

5    because of this threat, he stopped filing any more inmate appeals.

6          Defendants do not address this portion of plaintiff's retaliation claim.  Accordingly, to

7    the extent defendants' motion for summary judgment was intended to cover this portion of

8    plaintiff's retaliation claim, the motion is denied.  The court will refer this sole claim against

9    Spurgeon to settlement proceedings.

10   C.    Referral to Pro Se Prisoner Settlement Program

11         Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff

12   for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the

13   Pro Se Prisoner Settlement Program for settlement proceedings on the remaining portion of

14   plaintiff's retaliation claim set forth above.  The proceedings will consist of one or more

15   conferences as determined by Judge Vadas.  The conferences shall be conducted with

16   defendants, or their representative, attending by videoconferencing if he so chooses.  If these

17   settlement proceedings do not resolve this matter, the court will then set this matter for trial and

18   consider a motion from plaintiff for appointment of counsel.

19                                    **CONCLUSION**

20         1.     Defendants' motion for summary judgment is GRANTED.  Defendants Hale and

21   Traylor are therefore DISMISSED.  To the extent defendants' motion encompassed plaintiff's

22   retaliation claim against Spurgeon as discussed above, defendants' motion is DENIED.

23         2.     The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner

24   Settlement Program for settlement proceedings on the claims in this action, as described above.

25   The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of

26   this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all

27   interested parties or their representatives and, within **ten (10) days** after the conclusion of the

28   settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

1  If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion

2  for appointment of counsel, and the court will then set this matter for trial.

3          3.      The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka,

4  California.

5          4.      The instant case is STAYED pending the settlement conference proceedings.  The

6  clerk shall ADMINISTRATIVELY CLOSE this case until further order of the court.

7          IT IS SO ORDERED.

8  DATED: _____                    _Ronald M. Whyte_____

9                                           RONALD M. WHYTE
                                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

HECTOR LOPEZ,

                Plaintiff,

  v.

D. SPURGEON et al,

                Defendant.

_____/

Case Number: CV13-00173 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 3, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Hector Lopez V00109
C10-119
Post Office 7500
Crescent City, CA 95531

Dated: March 3, 2015

                                       Richard W. Wieking, Clerk
                                       By: Jackie Lynn Garcia, Deputy Clerk